Mr. Justice Scott delivered the opinion of the Court. The verdict and judgment in this case do not fail to shock a reasonable sense of justice at first blush; and, .so far from this impression being effaced by a scrutiny of the testimony, it is the rather more firmly fixed. At a regular, open, and fair sheriff’s sale, under execution, Calvert, by his agent, purchased four of Stone’s negroes, at sums which, in the aggregate, did not satisfy the execution by several hundred dollars, nor did subsequent payments satisfy it by two or three hundred dollars. One of the negroes so purchased was taken home by Calvert, and the other three left with Stone, with the express understanding that if, within one year, Stone would pay the sum for which the three negroes were purchased, and also wholly satisfy the judgment by paying the residue, that Stone might have the three negroes, but, if he failed to do so, Calvert was to take away the negroes. At the expiration of the year, several hundred dollars still remaining unpaid on the judgment, Calvert went to Stone’s residence for the three negroes, saying, when he had arrived there, that it was “ a hard case, and a security debt,” and he “intended to act liberally” with Stone. After an interview between them, (but what transpired at this interview is in no way shown by the testimony,) Calvert, through the witness’ assistance, made a bill of sale for the “old negro, Ben” to a son of Stone, expressing therein the receipt of $150 as a consideration, and, at the same time, took away with him the other two slaves: both parties, at that time, “ expressing themselves satisfied with each other’s conduct.” Now, if the hypothesis be indulged that Calvert gratuitously gave to the son of Stone the old negro, Ben, in obedience to the promptings of a generous nature, and as a mitigation of any supposed harshness of his conduct in having had Stone’s four negroes seized and sold under execution the year before, and this is not improbable from his liberality, in proof, in permitting three of the four negroes, that he had fairly purchased, to remain with Stone one year, (under the understanding in proof,) to the end that Stone might have a reasonable chance to regain them, it will at once be perceived that there will not remain in the proofs a shadow of a shade of testimony to sustain the verdict and judgment. If Calvert’s generosity had gone beyond the gift of the old slave to Stone’s son, and to the whole extent of a gratuitous surrender of all claim to the residue of the judgment, would not the same prudence that suggested the bill of sale as an evidence of title, have also suggested some tangible evidence of the satisfaction of the judgment; and, especially so, had this residue been actually paid in any thing oí value ? But we prefer to place the reversal of this judgment upon another ground. The testimony that was allowed to be produced over the objection of Calvert, going to show that the negroes purchased by him were actually worth more money than he gave for them, and which must have had some influence in moulding the verdict, was wholly inadmissible in the absence of any proof going to show an agreement of Calvert with Stone to allow him more for the negroes than the prices respectively at which he purchased them: because, unconnected with such an agreement, and none such is in proof, or can be reasonably deduced from the testimony, this evidence was altogether irrelevant, and neither proved or tended to prove the plea of payment. The admission of this testimony, then, over the objection of Calvert, was error; and, as it was calculated to have influence in mould-ing the finding of the Court, the new trial ought to have been granted. Let the judgment be reversed, a new trial awarded, and the cause remanded to be proceeded with.